## DEDERICK *v.* SEIGMUND.

*(Circuit Court of Appeals, Second Circuit. July 20, 1892.)*

PATENTS FOR INVENTIONS—LIMITATION OF CLAIM—BALING PRESSES.

In letters patent No. 232,200, issued September 21, 1880, to Albert A. Gehrt for an improvement in baling presses, the inventor describes a means of arresting the backward motion of the traverser, by causing the top press planking to be inwardly adjustable by means of a set screw, so as to impinge upon the traverser, and gradually check its motion. He also suggests that the same result may be accomplished by permanently narrowing the planking. *Held,* that the patentability of these devices is of a very low order, and the second claim, which covers "a friction plate or pressure contrivance for applying friction to the traverser to retard its backward movement," is entitled only to a narrow construction.

Appeal from the Circuit Court of the United States for the Northern District of New York.

In Equity. Suit by Peter K. Dederick against Carl Seigmund for infringement of a patent. The court below dismissed the bill. 42 Fed. Rep. 842. Complainant appeals. Affirmed.

*Melville Church,* for complainant.

*George H. Knight,* for defendant.

Before LACOMBE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. This is an appeal from the decree of the circuit court for the northern district of New York, which dismissed the

complainant's bill in equity, founded upon the alleged infringement of letters patent No. 232,200, dated September 21, 1880, to Albert A. Gehrt, for an improvement in presses for baling hay. The portion of the patented improvement which is involved in the record of the case consists in the means which the patentee provided for resisting the backward movement of the traverser, so as to prevent a shock to the frame or other part of the machinery. The description of this portion of the invention which the patentee gave in his specification is as follows:

"In presses of this class the traverser is reversed by the reaction or back expansion of the pressed material, and ordinarily with such force as to cause a severe shock to the frame and power connections. To remedy this defect, I apply more or less friction to the traverser during its backward movement, and thus stop its motion gradually. Various instrumentalities may be employed in carrying out this idea, but I prefer to adjust the lining or planking, E, by means of an adjusting screw or screws, S, so as to cause it to bear upon the top of the upper rear extension of the traverser, as shown in Fig. 1. By operating the screw, the lining or planking can be made to bear more or less tightly, as will be readily understood. The lining or planking may be made permanently contracted, if desired, and the same result be produced."

The second and third claims relate to this portion of the device, and are as follows:

"(2) In a baling press, in which the traverser is reversed in whole or in part by the reaction or back expansion of the pressed material, a friction plate or pressure contrivance for applying friction to the traverser to retard its backward movement and prevent shock, substantially as described. (3) The combination, with the traverser having the rearward extension, of the lining or planking, and the set screw for adjusting the same, substantially as described, for the purpose specified."

The second claim is the only one which is alleged to have been infringed.

The idea which the patentee wished to embody in wood and iron was the gradual stoppage of the motion of the traverser during its backward movement by means of the application of friction. The instrumentalities which he selected were, first, a brake, which consisted of a portion of the top planking of the press box, made adjustable by means of a set screw, so as to cause the planking to bear upon the top of the rear extension of the traverser during its backward movement. This combination is described and claimed in the third claim. The second instrumentality was the combination with the traverser of the press planking made permanently contracted or narrowed, so that the same kind and amount of friction shall always be brought to bear upon the traverser. The second claim can properly be construed to include, in a baling press of the rebounding traverser type, the described pressure contrivance, consisting of the adjustable planking of the press box or the permanently contracted planking. In the defendant's device, an eccentric upon the top of the press regulates rods extending from the eccentric to upright rods on the sides of the press, which bear upon the ends of small brakes which are hinged to the end of each side of the press. Inasmuch as, in this device, friction is not applied by the use

of planking of the press box, as a brake, but by a contrivance of eccentric and rods, which rods bear upon brakes which are hinged to the sides of the press, the defendant does not infringe the second claim, unless it should be considered so broad as to include a friction plate or pressure contrivance for the purpose named in a baling press of the described type, in which a part of the planking is not used as the instrumentality by which friction is applied. It is virtually claimed that any adjustable or nonadjustable pressure contrivance for applying friction to the traverser to retard its backward movement, and prevent shock, is an equivalent of the means specified in the patent. The complainant bases his contention that the claim should have a broad construction upon the fact that the patentee was a pioneer inventor of this part of a baling press. It is true that, when the invention is of a primary character, a larger latitude is given to the equivalents which the patent includes than if the invention was a modification of a well-explored art. In the former case, devices which operate upon the same principle and perform the same functions by analogous means are held to be infringements, (*Mc-Cormick* v. *Talcott*, 20 How. 402;) and it is also true that when mechanical means are for the first time invented, which enable a law of science or force of nature to be used so as to accomplish a practical and beneficial result, such as the Bell telephone, or when an inventor invents mechanical means for carrying into effect a newly-discovered and useful principle of operation, like the double carbon of Brush, the inventor's properly drawn patent will include a very wide scope of analogous mechanical means which accomplish the same result. But this invention, though it may be called a primary one, is not of the character to which any such latitude can be given. The patentee sought to check the backward motion of the traverser. It naturally occured to him that it could be done by applying some sort of a brake, which would slowly and gradually arrest motion. A brake is an old and familiar mechanical appliance, and is often applied in a very simple way. The patentee applied it with like simplicity, by causing the top press planking to be inwardly adjustable, so as to impinge upon the traverser, and gradually check its motion. He also suggested the primitive idea of permanently narrowing the planking. The patentability of either of these devices is of a very low order. Having made this improvement, he broadly claims in his patent any friction plate or pressure contrivance, and desires to include all the more elaborate and ingenious methods of constructing a brake which may be introduced. Such a construction is inadmissible, because a patented invention of this character, which with difficulty maintains its right to patentability, belongs to a different class from the one to which the doctrine in *McCormick* v. *Talcott, supra,* and kindred cases, applies, and is to receive a narrow construction. The decree of the circuit court is affirmed.